BEHLING, Respondent, vs. WISCONSIN BRIDGE & IRON COM-
PANY, Appellant.

*October 27—November 17, 1914.*

*Trial: Setting aside or changing jury's findings: Discretion: Appeal:
Review of verdict: Harmless errors: Instructions to jury: Ar-
guments of counsel: Informing jury of effect of answers: Mas-
ter and servant: Injury: Assumption of risk.*

1. The trial court may, in its discretion, set aside a jury finding
which appears to be contrary to the clear preponderance of the
evidence; but it should not change such finding to accord with
the weight of the evidence unless the evidence is so clear as to
leave no room, in any reasonable view, for conflicting infer-
ences.

2. A finding by the jury which the trial court has refused to set
aside will not be disturbed by this court on appeal unless it is
wholly unsupported by any credible evidence; and evidence is
not entirely incredible unless it is contrary to conceded facts,
or to matters of common knowledge, or to all reasonable prob-
abilities.

3. In an action for injuries to an employee whose hand was crushed
by the car of a traveling crane while he was engaged in paint-
ing an iron pipe near the pathway of such car, although a
finding by the jury that plaintiff did not arrange with the
crane man that he would look out for his own safety is clearly
against the preponderance of the evidence, yet, the trial court
having refused to set it aside and it being supported by testi-
mony of the plaintiff which is not entirely incredible, this
court declines to disturb such finding.

4. An instruction with respect to the matter covered by such find-
ing which seemed, in some of its language, to limit the jury to
consideration of the testimony of the witnesses who testified
directly to what was said by plaintiff and the crane man, but
in another part referred to all the testimony bearing on the
question, is *held* not to have been prejudicially erroneous, there
being no reasonable probability that the jury were misled.

5. Permitting plaintiff's counsel, in addressing the jury on a vital
question in the case, to inform them as to what answer would
be favorable to plaintiff, was error, but was not in this case
prejudicial, because, from the very nature of the case and the
general discussion of the evidence, the jury must in any event
have known the effect of their answer.

APPEAL from a judgment of the circuit court for Milwaukee county: W. J. TURNER, Circuit Judge. *Affirmed.*

Action to recover compensation for a personal injury which happened to plaintiff August 24, 1911, while he was performing his duties as an employee of defendant, which was carrying on a manufacturing business in the city of Milwaukee, Wisconsin.

In defendant's mill yard there was a heavy traveling crane, the entire appliance conditioned as follows: There were trestles about sixteen feet high extending east and west in a mill yard for a distance of about 280 feet. A crane car ran on rails at the top of the trestles. The supporting trusses were about thirty feet apart. There was an iron air feed pipe, extending from end to end under the trestle top, about two and a half feet therefrom and the same above parallel angle-iron connections between the sets of truss posts. On the south side of the trusses there were posts reaching several feet above the top of the trestle. To such posts two sets of heavily charged electric wires were allotted, the upper set being feed wires for operating the appliance and lower set for lighting wires, the latter being a short distance above the top of the trestle, and sagging more or less according to temperature, and sometimes to near the top of the trestle. The crane carriage was carried below the trestle top, leaving but a few inches clearance of the south trestle. There were windows in such carriage, affording the crane operator facility for a clear view along the feed pipe. The carriage had a hook suspended from it for attaching to loads to be conveyed. The carriage traveled frequently one way or the other and at a speed of about three and one-half miles per hour. It could be easily and quickly stopped by the operator. He had full control to start or stop it, or operate it slowly or at maximum speed, by manipulation of controlling levers. It was his business to watch the man stationed to operate the hook and obey his signals. The movement of the machinery caused

considerable noise and trembling of the trestle; but it was much confused with or rendered indistinguishable by the noise of near-by machinery.    Plaintiff was required to mount the trestle, stand on the angle irons, and paint the feed pipe. He could have done that and kept out of the pathway of the crane by going along the south side of the south trestle; but not by standing on the inner side and to the north.    Plaintiff first painted west, moving backward and standing on the safe side of the trestle.    He was blind in the left eye.    After completing his work, moving west, he turned and painted the other way, with his blind eye toward the pipe.    In this movement he was on the north and inner side of the trestle.    He suspended his paint pail from the feed pipe, took hold of the trestle with his left hand, and painted with his right.    Had he taken the place of safety as to the crane carriage, he would have been near to the electric wires; just how near was one of the litigated questions.    He omitted to take such position, as he claimed fearing the danger from proximity of such wires.    They were insulated, but the protection was liable to be inefficient and he was afraid of it, as he claimed.

The testimony showed, or tended to show the foregoing and this: Plaintiff was perfectly familiar with the operations of the crane.    He knew he could accomplish his work and keep in a place of safety, but by painting as he did, that he had to give way to the crane when it came along or would probably be injured.    There was a conflict as to whether the crane passed him one or two times before he was injured, he being at such times on the safe side of the trestle.    The crane man and hook man testified in the affirmative and to the effect that they had no reason to expect plaintiff would take the place of danger.    Had he faced the crane he would have seen it in time to have avoided being injured.    As it was his line of sight was otherwise directed.    There were men working near by with tools operated by the air-line pipe and other near-by operations causing much noise and tending, as before

stated, to make imperceptible that of the crane. He worked
on the inside of the trestle on account of the electric wires
and his bad eye. Suddenly he was made conscious of the
approach of the crane car. It was then only a few feet
away. The crane man had not given him notice. Knowing
if he remained where he was he was liable to be crushed, he
made a quick movement to reach the place of safety. In
doing so he grabbed the rail above, placing his hand in the
pathway of the car, and it was mangled thereby. He was
not cautioned, as he said, to look out for the crane, but told,
"Everything will be all right." He testified that he was
given assurance of safety. That was opposed by testimony
that he was charged to watch out for the crane and he re-
plied that he would take care of himself. There was also a
conflict as to whether the crane man or hook man could at-
tend to his duties and observe, at all times, a person circum-
stanced as plaintiff was. They testified very positively on
the subject in the negative.

The fault relied upon was failure to furnish plaintiff a
reasonably safe place to work, and to guard his safety by
giving him notice of the approach of the crane car to his
working place.

The cause was submitted to the jury with the following re-
sult: The place where plaintiff was employed was not as free
from danger of personal injury as the nature of the work
would reasonably permit. Such fact proximately caused the
injury. When the foreman directed plaintiff to do the work
he gave him assurance of personal safety. Plaintiff relied
thereon. The failure to make good such assurance was the
proximate cause of the injury. Plaintiff exercised ordinary
care in relying on the assurance of safety. He did not ar-
range with the crane man in regard thereto. He was not
told to speak to the crane man so the two would look out
for each other and replied that he would look out for himself
as the crane man had enough to do. The foreman failed to

exercise ordinary care in respect to warning plaintiff of the dangers incident to the work and, particularly, as he was doing it. Such failure was the proximate cause of the injury. Plaintiff did not assume the risk of doing the work as he performed it. He was not guilty of any want of ordinary care which contributed, proximately, to his injury. He was damaged to the extent of $3,000. Judgment was rendered in his favor for such sum with costs.

For the appellant there was a brief by *Miller, Mack & Fairchild,* and oral argument by *S. J. McMahon* and *E. S. Mack.*

For the respondent there was a brief by *Rubin & Zabel,* and oral argument by *W. B. Rubin* and *H. B. Walmsley.*

MARSHALL, J. The first complaint made on behalf of appellant is that the finding as to there not having been an arrangement between the crane man and respondent for the latter to care for his own safety, should have been changed to the affirmative. Two witnesses, the crane man and his assistant who attended to the hook, called the chain man, testified, positively, in the affirmative; the former to the effect that in a conversation with respondent it was definitely arranged that he would attend to his own safety, and the latter that he was near by and heard such conversation. That was corroborated by evidence of four witnesses as to respondent having said soon after the accident, that it happened through his own fault, as he had an arrangement with the crane man to look out for his own safety, and evidence of the foreman that, before work commenced, he admonished respondent to speak to the crane man so they would look out for each other, and respondent replied that he would look out for himself as the crane man had all he could attend to. Respondent denied having had the conversation testified to by the foreman and said that the only conversation had with the crane man consisted of his notifying the latter of his being on the work,

and the crane man replying, "all right." As to the claimed
admission, he testified that he did not remember having made
such, and that at the time of the so-called occurrence, he was
suffering great pain.

In view of the foregoing in the record, clearly, the finding
is against the preponderance of. the evidence. The court
might have set the verdict aside and granted a new trial on
that account; but it does not, necessarily, follow that the
court should have changed the answer to favor appellant, or
that reversible error was committed in respect to the matter
otherwise.

While a jury finding against the clear preponderance of
the evidence, presents a case for consideration by the trial
judge within his discretionary right to grant a new trial, he
is not required to do so, nor to change the finding to accord
with the greater evidentiary weight. The latter is proper
only when the evidence is so convincing as to leave no room,
in any reasonable view, for conflicting inferences. In that
situation the real truth of the matter appears as matter of
law, leaving no legitimate jury question.

So it has been often said that, while the trial court is jus-
tified in setting aside a jury finding if it appears to him
contrary to the preponderance of the evidence, and where it
is manifestly that way he ought to take such course, the dis-
cretionary power is so broad, it admits of being overstepped
only where, giving to the evidence all the weight it will rea-.
sonably bear and taking into consideration the most favorable
inferences which in any reasonable view arise therefrom,
there is no fair doubt but that the jury finding is wrong.
*Powell v. Ashland I. & S. Co.* 98 Wis. 35, 73 N. W. 573.
That has been commonly administered as requiring a verdict
to be sustained unless contrary to all reasonable probabilities
which, in general, excludes a situation where there is but the
evidence of one witness which is not inherently false as con-
trary to physical possibilities or otherwise. That is illus-

trated as favorably to appellant by *Wunderlich v. Palatine F. Ins. Co.* 104 Wis. 382, 80 N. W. 467, cited to our attention, in its behalf, as anywhere.

The extreme doctrine of *Bank of Commerce v. Ross,* 91 Wis. 320, 64 N. W. 993, that where "there is evidence on both sides of a question," and the court below denies a new trial, *"this court is powerless to grant relief,"* unless "there is an *entire want of competent evidence on some vital point essential to sustain the verdict,"* was criticised as stating the rule to be followed with greater strictness than it had ever been stated before or had been stated since. That is not an exaggeration. Otherwise, given mere evidence of a competent character, from the mouth of a witness, however slight or incredible, and a verdict based thereon, and a refusal of the trial court to set it aside, there would be no power here to remedy the mischief, regardless of the obviousness thereof. Want of power was confused with when and when not, under rules of practice consistent with fundamental rights, to use power, and mere "competent evidence" was spoken of in place of any credible evidence. To remedy that the rules stated in *Badger v. Janesville C. Mills,* 95 Wis. 599, 70 N. W. 687; *Roth v. S.°E. Barrett Mfg. Co.* 96 Wis. 615, 71 N. W. 1034; *Flaherty v. Harrison,* 98 Wis. 559, 74 N. W. 360; and *Lee v. C., St. P., M. & O. R. Co.* 101 Wis. 352, 77 N. W. 714, were referred to and affirmed. They are to the effect that a verdict, even supported by the failure of the trial court, on motion, to change it, which is contrary to matters of common knowledge, conceded facts, or all reasonable probabilities, will be set aside on appeal. That preserves the constitutional right of trial by jury and vindicates the constitutional right of this court to decide all matters of law. It is for the court to determine whether there is a fair question of fact on the evidence as to what the truth is; that is, whether there are conflicting reasonable probabilities in respect to the

matter in dispute. If so, then arises the jury duty to determine what is the most likely and the satisfactory probability.

There is no constitutional right to have error stand for truth because so declared by a jury supported only by competent, though wholly incredible evidence. That should be well understood by trial courts, and its power, on all proper occasions, to use its discretion as well as to vitalize its duty to conserve rights in respect to jury determinations. It is only by doing so that the full efficacy of our system to mete out justice between man and man can be realized. Failure in any case, and especially where to disturb the verdict rests in sound discretion, leaves, in general, very little opportunity for relief because of the weight accorded to a trial court's decision, and the rule that evidence, to be entirely incredible, must be contrary to conceded facts, or matter of common knowledge, or to all reasonable probabilities, that being, generally, restricted to cases where the evidence is inherently unbelievable because physically impossible, or for some other cause.

We have thus gone into the subject of when an appellant can obtain relief from a jury finding in this court because the case before us, looking at the printed record, unsupported by the weight to be accorded to a trial court's decision, is a hard one, and so supported, it is not free from doubt. A very great duty rests on the trial court to determine, in such a case as this, whether, as matter of right or favor, the verdict should be set aside. In most cases and from a practical standpoint, in general, there rests the only opportunity for relief from an unjust verdict.

Counsel point with confidence to the rule in the *Wunderlich Case* (104 Wis. 382, 80 N. W. 467), which is somewhat broad and has never been extended or narrowed, except, perhaps, by restricting the term "against all reasonable inferences or probabilities" to the inherently incredible or physic-

ally impossible.    The court later said in *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57, which has been many times referred to with approval:

"The rule of this court is absolutely settled that, if there is any credible evidence which to a reasonable mind can support an inference in favor of a party, the question is for the jury. . . . Upon motion to set aside a verdict . . . the trial court enters a field of discretion in which he may consider whether there is such overwhelming preponderance of evidence against the verdict that it ought not to stand.    While this discretion must be exercised judicially, and may be so clearly abused as to warrant reversal by this court, that will be done only in most extreme cases, of which but few have ever arisen. . . . Human testimony may be so in conflict with conceded and established physical facts as to be incredible, for the reason that its truth is morally impossible, or so improbable in the course of nature as to approximate impossibility."

None of the illustrations contemplate existence· of entire incredibility, in the absence of inherent falsity and presence of opposing credible evidence, even though there be but a single witness on one side and quite a number upon the other.

Testing the situation before us by the foregoing, there does not seem to be fair room for the relief appellant seeks. It may be the trial court should have set aside the finding. I do not hesitate to say that, looking at the printed evidence alone, I think I should have done so, and not approved as true the testimony of the highly interested party, against the evidence of two others who were far less interested, if not entirely disinterested, and evidence,—as strongly about as human testimony could be of appellant having made contrary statements,—without submitting the matter to another jury. Yet it cannot be said that his evidence is entirely incredible. There was a conflict between witnesses with no physical impossibility to test the situation by, nor any conceded facts nor matters of common knowledge nor other equivalent element.

That often happens with but one witness on one side of a controversy and a number on the other. In such cases, there may be a reasonable probability of the one being in the right, and a jury have a right to so decide, if satisfied that the weight of the lone evidence, under all the circumstances, is greater than that of the multitude, and that it satisfactorily establishes the truth. So with some misgivings as to whether injustice has not been done, it is considered that the finding in question cannot be disturbed unless the instruction in respect to it was fatally erroneous.

The court used this language:

"That is a pure question of fact to be determined upon the testimony of the witnesses in the case, the crane man Kron, the hook man, and the plaintiff. Those are the only three witnesses. Now, gentlemen, it is for you to reconcile, if possible, that testimony. It is your duty. The testimony of these witnesses. If you cannot reconcile the testimony, then you must determine which of the witnesses tells the truth. Now, as you find the fact to be, after carefully looking over all the testimony in the case, recalling the testimony of the several witnesses on this point, gentlemen, you will answer that question 'Yes' or 'No' as the truth is, in your opinion."

So far as the instruction limited the jury, in answering the question, to the testimony of the three persons specifically named, it is so plainly wrong that the infirmity must have been apparent, at once, to counsel on both sides, and the jury. It is hardly possible that the court intended to so limit, or that any one was misled by the rather inadvertent expression as to the particular three witnesses. They were the only persons who testified directly to the subject of the question; but, as indicated heretofore, there were several other witnesses who gave very important testimony bearing on whether respondent testified to the truth. It will be observed that, after calling attention to the three witnesses, the jury were admonished of their duty to reconcile their evidence if possible, and if not, to determine which testified to the truth.

Then followed the closing admonition to look at all the evidence in the case and to "recall the testimony of the several witnesses on this point," in answering the question; plainly indicating that there were two classes of testimony in mind, that "of the several witnesses on this point," those testifying directly to what was said, "and all the testimony in the case." Had there been a purpose to restrict the view of the jury to the particular evidence "on this point," there was no point to the last part of the charge. Therefore it seems that must have referred to all the testimony bearing on the question of whether the particular witnesses told the truth. Had there been any doubt about that in the minds of counsel when the charge was given, or any doubt in their minds as to how the jury understood the matter, they would, doubtless, have promptly called the judge's attention thereto and he would have immediately remedied the infirmity.

There are other reasons why there is no reasonable probability of the jury's having been misled. The statement appertained to a matter as well known to them as to the court. We must presume they were men of average intelligence. We must also presume that they had been made, by counsel, to fully understand the importance of the question and of every part of the evidence bearing, directly or indirectly, thereon. Therefore, had they understood the instruction as appellant claims, they certainly would, themselves, in some proper manner have called the court's attention to the mistake. The probabilities seem to be all in favor of the theory that the jury considered all the evidence in the case bearing on the question in answering and, therefore, in any event, that the mistake of the judge in forgetting part of the evidence or in stating the situation in an ambiguous manner, did not prejudice appellant.

Did the trial court commit harmful error in not changing the jury finding as to the foreman having assured respondent of protection as to his safety, or in respect to changing the

jury finding on the subject of assumption of risk? Those two matters are so involved in the first assignment of error, that they are ruled in respondent's favor by what has been said heretofore.

Further complaint is made because the court refused to give a requested instruction on the subject of contributory negligence. There was no harm in that, in any event, because such subject was fairly covered in the general instructions.

Further complaint is made because counsel for respondent was permitted in addressing the jury on a vital question to inform them as to what answer would favor the plaintiff. That was not good practice, as to counsel or court. It was a violation of the statutory right to have the jury, in answering the questions of a special verdict, do so without regard to the effect of their answers, and inferable statutory right not to have the minds of the jurors disturbed as regards the vital facts by dwelling upon the effect of any particular answer. This court has said so over and over again. Formerly, error in violating the scheme of the statute was deemed to be reversible error upon the general presumption of prejudice arising from such plain impropriety. But,—since the legislative emphasis in sec. 3072m of the Statutes—the command of the Code in sec. 2829 of the Statutes,—and the rule in administering it, that error will not work a reversal unless it affirmatively appears from the whole record that had such error not occurred the result might probably have been more favorable to the party complaining, *Koepp v. Nat. E. & S. Co.* 151 Wis. 302, 307, 139 N. W. 179,—the strict rule for which counsel now contends has not been adhered to. In view of the wise plan of the Code, as fully recognized and applied, merely so addressing a jury or instructing them as to disclose the effect of their answers to special questions submitted, will not be deemed to be prejudicial error, though the departure from correct practice might be carried so far, un-

der some circumstances, as to be harmful. It was not in this case. The jury must have understood, as counsel informed them, from the very nature of the case and the general discussion of the evidence, the effect of a particular answer. Nothing was really added by counsel to what they understood, if they were fit subjects to intelligently deal with the case, as we must presume was the fact.

Notwithstanding the foregoing, it must be understood that departure from the rule that jurors should not be specially informed of the effect of particular answers to special questions submitted for solution, counsel and court should observe their respective duties in the matter,—not disregard such duties, inadvertently or otherwise, because of the liberal rule which has been adopted for the more speedy, more practicable, and less burdensome to parties and the public, attainment of justice.

What has been said leaves nothing of moment uncovered by this opinion. The judgment must be affirmed, though not free from error, nor from probability that the better practice would have been to have granted a new trial upon the ground that the answer of the jury to the sixth question was so against the preponderance of the evidence that greater certainty of doing justice would have been attained by permitting defendant to have the conclusion of another jury.

*By the Court.*—The judgment is affirmed.