ISGRO, Respondent, vs. PLANKINTON PACKING COMPANY, Appellant.

*December 15, 1921—April 11, 1922.*

*Automobiles: Injury to laborer working in street: Negligence: Questions for jury.*

1. The question whether a defendant was guilty of any negligence which proximately caused plaintiff's injury is for the jury, if there is any credible evidence which to a reasonable mind would support any inference of negligence.
2. In an action for injuries received by a laborer working in a street, both the question as to whether the driver of an automobile truck was negligent in failing to give warning of his approach, and the question whether the laborer was negligent in pushing a wheelbarrow along a passageway in the street, are for the jury, and, there being evidence to sustain their verdict, it will not be disturbed.
3. A laborer engaged in pavement construction work was not required to use the same degree of care to avoid injury from automobiles using the street as an ordinary traveler thereon.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Affirmed.*

The appeal is from a judgment awarding damages to the plaintiff for personal injuries sustained as a result of being struck by defendant's automobile truck.

Plaintiff, an Italian laborer working for the Milwaukee Electric Railway & Light Company, on the 25th day of February, 1919, while wheeling a wheelbarrow loaded with crushed stone on Lisbon avenue in the city of Milwaukee,

was struck by the defendant's automobile, as the result whereof he sustained serious injuries to his right lower limb.

The evidence shows that Lisbon avenue, a public street in the city of Milwaukee running northwesterly and southeasterly, is intersected by double tracks of the Chicago, Milwaukee & St. Paul Railway Company, and that it has located thereon, at the usual place for street-car tracks, two tracks of the Milwaukee Electric Railway & Light Company. On the date of the injury the pavement between the railroad tracks and the street-car tracks had been torn up, and the employees of the street car company were engaged in relaying such pavement. To the south of a line extended across said St. Paul tracks, representing the continuation of the curb on the north side of the avenue, a space of about ten feet in width was planked, and this planked space afforded the only passageway for vehicles traveling towards the west on said Lisbon avenue. On the north side of said avenue and close to the curb, and a distance of between thirty and forty feet east of the easterly railroad track, there was a pile of crushed stone, extending out from the curb into the avenue a distance of about eight feet. Plaintiff on the day in question, after having loaded his barrow with crushed stone, looked toward the east and there discovered the defendant's truck coming westerly, a distance away of about 250 to 300 feet. Thereupon he took his wheelbarrow and wheeled the same, loaded as aforesaid, towards the west until he arrived at a point about one foot east of the easterly rail of the easterly track of said railroad company, and there set his wheelbarrow down. He had then arrived at the planked crossing above described. He then discovered the defendant's truck a distance of between 80 and 120 feet towards the east from where he then stood, and, apparently concluding that he had ample time in which to cross over said planked crossing, he continued with his wheelbarrow towards the west until he arrived at the easterly rail of the westerly track of the railroad company, at which point he

claims to have been struck upon his right arm by the south
front fender of the truck, as the result whereof he was
turned about, and when the truck had proceeded so that the
left rear wheel was about opposite from where he was then
standing such wheel came in contact with his right lower
limb, causing a wound which is described by Dr. Lemon as
follows:

"He had a dissecting wound of the skin on the back of the
foot which extended from the inner to the outer side of the
foot in a transverse line, dissecting down the skin and the
soft parts immediately under the skin, dissecting them away
from the bone and from the large ligament or tendon, which
is found on the back of the foot, namely, the tendon Achilles,
. . . as though the cap of the skin on the back of the foot
had turned or stripped right down; . . . the tissues were
not materially injured at all other than by being dissected
down."

The plaintiff, testifying through the aid of an interpreter,
describes the happening of the injury as follows: "The
truck hit me and turned me around and then the wheel
passed over my leg and knocked me down."

The evidence also shows that when the plaintiff was
picked up after the injury he was lying west of the westerly
track of the railroad company. The evidence does not
disclose that any other witness excepting plaintiff saw just
how the accident happened.

Dr. Lemon also testified as an expert that the injury was
the result of a force applied anatomically from above down-
ward, and could have been inflicted either while he was
standing up or while he was lying down.

Peters, defendant's employee and the driver of the truck,
testified that he sat on the left-hand side on the seat, the truck
having a left-hand drive, and that a helper named Devine
sat on the same seat, to the right of him. Both the driver
and Devine testified that they first saw the plaintiff when
he was about fifty or sixty feet away, while he was crossing
with his wheelbarrow from the north to the south of the

planking, and that the driver then called out to him to get out of the way, and that the plaintiff looked at him and kept going towards the south, looking at the truck as he was doing so; that when the plaintiff had arrived with his barrow at a point in close proximity to the northerly rail of the northerly street-car track, he put down his barrow and stood between the handles thereof, looking toward the east, and that when the front wheels of the truck passed plaintiff the truck was about one foot distant from him, and that after the front wheels had passed, both he and Devine looked towards the rear, and as the rear left wheel came opposite to where the plaintiff then stood they saw him falling over, "like a statue and did not move." Both Peters and Devine testified that plaintiff fell with his head towards the west and his feet towards the east, and that he was picked up immediately west of the westerly track of the railroad company, and that no portion of the automobile at any time came in contact with the plaintiff, and that the rear left wheel did not pass over his foot.

Roy Muehl, defendant's witness, testified as an expert that the truck in question was a three-ton truck, standard make; that it has a first, second, third, and fourth speed, and a reverse; that the maximum speed in number one is 2 miles per hour, in number two 4 miles, in number three 8.1, and in number four 12 miles, and in reverse 2 miles; that over the front wheels there were fenders which projected forward to a distance of about sixteen inches back of the extreme front end of the wheels, and that the front fenders project toward and over the outer side of the wheels a distance of about two inches; that the height of the front part of the front fenders is three feet five inches above the base of the wheel; the hubs of the front wheels extend sideways beyond the fender five inches, in other words the hub is five inches over all, and the end of the hub cap extends seven inches beyond the tread of the wheel; that the width of the truck

over all is seven feet six inches from hub cap to hub cap, and the truck is nineteen feet nine inches long. It also appears that the truck had solid tires and that there extended outwardly beyond such tires a steel rim.

The plaintiff testified that after he was precipitated to the ground he was lying with his head toward the south and his feet towards the north.

The jury in the special verdict submitted found (1) that the driver of the defendant's truck failed to exercise ordinary care in the management and control thereof at and immediately prior to the time plaintiff was injured; (2) that such failure was the proximate cause of the injury; (3) that the plaintiff was not guilty of a want of ordinary care which proximately contributed to produce the injury.

For the appellant there was a brief by *McGovern, Hannan, Devos & Reiss* of Milwaukee, and oral argument by *F. E. McGovern* and *Wallace Reiss.*

*William L. Tibbs* of Milwaukee, for the respondent.

The following opinion was filed February 7, 1922:

DOERFLER, J. 1. Was the defendant guilty of negligence which proximately caused the injury? In considering this question we must determine whether there was any credible evidence in the case supporting the finding of the jury on that subject. If there was such credible evidence which to a reasonable mind can support any inference in favor of a party, the question is for the jury. *Smith v. Reed,* 141 Wis. 483, 486, 124 N. W. 489.

It has been held in *Behling v. Wis. B. & I. Co.* 158 Wis. 584, 591, 149 N. W. 484, that:

"Failure in any case, and especially where to disturb the verdict rests in sound discretion, leaves, in general, very little opportunity for relief because of the weight accorded to a trial court's decision, and the rule that evidence, to be entirely incredible, must be contrary to conceded facts, or matter of common knowledge, or to all reasonable probabili-

ties, that being, generally, restricted to cases where the evidence is inherently unbelievable because physically impossible, or for some other cause."

With the law of this state as above set forth, let us view the evidence in regard to defendant's alleged negligence. As defendant's truck approached the railway crossing it at no time went beyond a speed of twelve miles per hour. This was a physical fact established in the evidence, against which the testimony of witnesses is unavailable. The truck, therefore, was not going to exceed twelve miles an hour when plaintiff first saw it as he picked up his barrow at the heap of crushed stone, and it did not exceed that limit when the plaintiff arrived just east of the easterly railroad track. The driver testified that he did not see the plaintiff until he was within fifty or sixty feet from him, and that plaintiff was wheeling his barrow on the planking towards the south, and that instead of blowing a horn or giving some other signal he hollered to the plaintiff to get out of his way. On the other hand, plaintiff testified that he was wheeling towards the west and had his back towards the truck and that no signal or warning of the approach of the truck had been given. Here we find a sharp conflict in the evidence on the two sides of the case, and while the evidence of the driver and his companion is not improbable, nevertheless, in view of the location whence the plaintiff came, and his destination, and the surrounding facts and circumstances, we are inclined to believe that plaintiff's version is more probable than that claimed by the driver; at any rate the fact was a proper one to be submitted to and determined by the jury.

Plaintiff claimed that he first saw the truck a distance of about 250 feet towards the east, and on the occasion when he looked the second time the truck was about eighty or more feet distant from him. The driver testified that when he first saw the plaintiff and his barrow he was about fifty feet distant from them; thus presenting a situation from

which the jury could readily infer that the driver was not having a proper lookout ahead of him, for there is nothing in the evidence to show that the driver's view could in any way have been obstructed. Before the truck arrived at the narrow plank crossing, ample opportunity was afforded the driver to ascertain the width of the passageway and the accompanying danger of more than one vehicle crossing the same at the same time. According to the driver's own testimony, the truck was so constructed and was under such control that it could have been stopped at any time within a distance of two feet. There being ample credible evidence to sustain the plaintiff's version that he was traveling west on the narrow planking at the time he was struck by the front left fender of the truck, in view of all the facts and circumstances in the case as detailed, the fact was properly before the jury as to whether plaintiff's version in that regard was correct or not. The jury evidently determined that it was correct.

Plaintiff testified that he was struck by the left front fender on or about the elbow of his right arm while he was wheeling his barrow. This claim of the plaintiff is not only credible but highly probable, for it appears from the evidence that the front fender would be at or about the level of the location of plaintiff's right elbow while he was wheeling the barrow. And his testimony is also credible and highly probable that the force thus applied turned him about, so that when the rear left wheel of the truck arrived opposite him his position had been so changed that such rear wheel came in contact with the lower part of his right foot, causing the injuries complained of and precipitating him to the road. While the driver and his companion both testified positively that as the rear left wheel of the truck passed the plaintiff they both looked backward and that no portion of the truck touched the plaintiff, nevertheless, in view of the injury which resulted, it appears conclusive to our minds that such injury was inflicted by the rear left

wheel of the truck coming in contact with plaintiff's lower right limb. If evidence were needed to corroborate the infliction of the injury in that manner, the testimony of the driver and his companion amply furnishes the same, for both testified that when the rear left wheel came to a point opposite where plaintiff was standing they saw him falling over like a statue. This can readily be explained by the fact that the wheel came in contact with the lower portion of plaintiff's right lower limb, which prevented him from falling in the ordinary manner and which explains the statue-like falling as contended for by the driver and his companion.

We thus have the situation presented of a three-ton truck, laden down by a ton or more of weight, under full and absolute control of the driver, approaching the plaintiff from the rear, while he was laboring under the burden resting on him while wheeling the heavy barrow of crushed stone, in an attempt to clear the narrow passageway in time so as to avoid a collision with the truck. Can we say, under these circumstances, that the situation presented did not constitute a proper question for the jury on the subject of the negligence of the driver of the truck?

The degree of care which it is necessary for a driver of an auto vehicle under such circumstances to exercise is fixed to a large extent by the necessity of conserving human life and limb. It was fully within the power of the driver to size up the situation, either before he entered upon the passageway or before he attempted to cross the westerly railway tracks, by so regulating the operation of his car or by stopping it, as to prevent the injury. Such a slight degree of thoughtfulness and patience would have avoided not only much human suffering but would have saved whole an humble but productive member of society.

2. Was the plaintiff guilty of contributory negligence as a matter of law?

At the time of the injury the plaintiff was engaged as a laborer in performing construction work in the relaying of

a pavement between the street-car tracks and the railway tracks. He occupied a different position with respect to the degree of care required of him than an ordinary traveler upon the highway. In *Dinan v. Chicago & M. E. R. Co.* 164 Wis. 295, 159 N. W. 944, it was held:

"A man who is engaged in work upon the highway cannot, if he performs his duty, spend a large part of his time in looking for the approach of street cars or other vehicles. In a busy street he would accomplish little if he did so. Of course he cannot let his thoughts go wool-gathering and expect all users of the highway to give place to him; he must exercise some vigilance; he must keep that lookout for vehicles and cars which an ordinarily careful man similarly situated would keep; a man who is compelled to be in the street and to be giving attention to his work. Such care must manifestly be a lesser degree than the care required of a person who is on the highway for the purpose of travel alone and may come and go at will. This court has affirmed the principle in *Turtenwald v. Wis. Lakes I. & C. Co.* 121 Wis. 65, 98 N. W. 948, and other courts have adopted the same rule. *Graves v. Portland R., L. & P. Co.* 66 Oreg. 232, 134 Pac. 1; *Lewis v. Binghamton R. Co.* 35 App. Div. 12, 54 N. Y. Supp. 452. See 2 Thompson, Comm. on Neg. § 1463."

So that when plaintiff arrived at the east railway track and saw the defendant's truck eighty or more feet distant, he had not only a duty to perform towards his employer but a duty to exercise a degree of vigilance with respect to the oncoming truck. He made his observations, and he saw before him a narrow passageway, about ten or more feet in width, which both he and the truck were obliged to pass. He evidently calculated that he would be able to discharge both obligations safely and thus be enabled to clear the passageway in time to avoid a collision. The degree of care required in the instant case of the plaintiff is the degree which an ordinarily careful laborer, similarly occupied and situated, would exercise under the same or similar circumstances. It is sometimes difficult for a man of much higher

intelligence to act correctly under similar circumstances. The plaintiff had a right to be upon the highway and the passageway; nay, he was necessarily there in the performance and discharge of his duty. The driver of the truck could readily observe this. If in discharging his duty and exercising his judgment the plaintiff fell slightly short in the estimate which he made with respect to clearing this passageway in time, it cannot be said as a matter of law that he was guilty of the exercise of a want of ordinary care under the circumstances.

The learned counsel for the defendant, both in the oral argument and in his brief, accepting the version of the defendant's witness that when the plaintiff arrived at the west railway track going south over the passageway he set down his barrow, standing between the handles, and was looking east, and that the truck had safely passed him with the front wheels, evolved the theory (and a theory it was, pure and simple) that the plaintiff concluded that the truck had passed and proceeded to lift the barrow, and in endeavoring to proceed toward the south extended his right foot backward at the time when the left rear wheel of the truck was about to pass, and thereby came in contact with such wheel, as the result whereof the injury was produced. Counsel also contended that that was the only plausible theory which explained the accident. In reply it may be said that there is no evidence whatsoever to substantiate such theory. It is mere speculation and conjecture. On the other hand, there is credible evidence to support plaintiff's version, and surely the jury was justified, under the circumstances, in accepting the same rather than resorting to a theory which had no foundation in fact.

Of course it cannot be logically claimed that the wheel passed over the foot, for if such had been the case the foot would have been crushed and an injury produced entirely different from that shown in the instant case. The jury was justified in either believing and finding that the injury

was occasioned by the rim of the rear left wheel of the truck coming in contact with plaintiff's lower right limb before he fell or while he was lying prone on the ground, as testified to by defendant's witnesses, with his head lying towards the west and his feet towards the east.

We therefore conclude that there was ample credible evidence to be submitted to the jury upon plaintiff's theory of the happening of the injury, and that, the jury having sustained plaintiff's contention, the judgment of the lower court cannot be disturbed. *Smith v. Reed,* 141 Wis. 483, 486, 124 N. W. 489; *Collier v. Salem,* 146 Wis. 106, 108, 130 N. W. 877; *Barlow v. Foster,* 149 Wis. 613, 621, 136 N. W. 822; *Behling v. Wis. B. & I. Co.* 158 Wis. 584, 149 N. W. 484.

*By the Court.*—Judgment affirmed.

ROSENBERRY and OWEN, JJ., dissent.

A motion for a rehearing was denied, with $25 costs, on April 11, 1922.