KIELICH and another, Appellants, vs. WHITTAKER, Respondent.

*March 13—April 8, 1924.*

*Automobiles: Negligence: Pedestrian injured at crossing: Contributory negligence: Questions for jury.*

1. In an action for injuries to the plaintiff, who was struck by defendant's automobile truck while she was crossing a street intersection, evidence that the driver of the truck had an unobstructed view of a more or less crowded street and was proceeding slowly, and could have stopped in time to avoid the accident, is *held* to present a jury question as to negligence on the part of the driver; and it is also *held* that the testimony of the plaintiff presented a question for the jury as to whether she was in the exercise of ordinary care in crossing the street.   p. 476.

2. Where there is any credible evidence to sustain plaintiff's cause, giving it the most favorable inference it will reasonably bear, questions of fact are for the jury.  p. 476.

APPEAL from a judgment of the circuit court for Milwaukee county: JOHN J. GREGORY, Circuit Judge. *Reversed.*

Personal injury. Action for damages. This is an appeal from a judgment in favor of the defendant, dismissing the complaints with costs.

Two actions were begun, one by *Clara Kielich* and one by her husband, for damages on account of injuries received by *Clara Kielich* by reason of an auto truck of defendant colliding with her while she was crossing a public street. By stipulation both actions were combined and tried together before the court and a jury.

At the close of the testimony the court directed a verdict on the grounds that as a matter of law it appeared from the evidence that defendant was not guilty of negligence, and that *Clara Kielich* was guilty of negligence. The motion for a new trial was denied, and plaintiffs appeal. Errors assigned are: directing the verdict in favor of the defendant; refusing the motion for a new trial; and in sustaining objections of defendant to questions asked by plaintiffs of witnesses.

The accident resulting in injuries to *Mrs. Kielich* occurred at the intersection of Mitchell street and Fifth avenue in the city of Milwaukee, which cross each other at right angles, Mitchell street running east and west and Fifth avenue north and south. The street car company operates cars east and west on double tracks on Mitchell street. On the afternoon of March 27, 1920, *Clara Kielich* was walking west on the north side of Mitchell street, and, coming to Fifth avenue, she attempted to cross the avenue, when she was injured by defendant's auto truck driven north on the avenue by defendant's servant.

For the appellants there was a brief by *Schmitz, Wild & Gross* of Milwaukee, and oral argument by *A. J. Schmitz.*

For the respondent there was a brief by *Timlin & Dean* of Milwaukee, and oral argument by *Patrick W. Dean.*

CROWNHART, J. The questions presented are: Does the evidence disclose as a matter of law that there was no want of ordinary care on the part of defendant's driver in operating its auto truck at the time of the collision; and Was there any want of ordinary care on the part of *Clara Kielich* contributing to the accident, as a matter of law?

*Clara Kielich* testified that she was a married woman, and that about 5 o'clock on the day of the accident she came to Fifth avenue, walking west on Mitchell street, and at the time there was a street car going west on Mitchell street and about to cross Fifth avenue. She looked south on Fifth avenue, but by reason of the street car crossing the avenue she could not see beyond the car, and then she looked north as she saw the car passing, and walked straight from east to west. The street car went faster than she, and got by her before she was injured. When the car passed by and she again looked to the south, defendant's auto truck coming from the south was upon her. It was about three feet distant, and she was so frightened that she did not move. The car struck her and ran over her body. She was badly injured and did not learn just what happened after the auto truck struck her. She claimed that she had walked about twelve to fifteen feet from the curb when she first saw the truck, and there was no horn blown and no signal given. Witness testified that she saw people on the crosswalk, walking ahead of her, and that there was a crowd of people on Fifth and Mitchell. The street car had not passed her before she left the curb. It was going as she stepped off the curb. When she first saw the truck it was three feet south of her, going north. The street car going west went pretty fast. When she went on, the street car was just with her. When she looked north she saw nothing; then when she looked south she saw the truck.

Ignatz Tershiner testified:

I am a laborer and a musician. I saw the accident. I was standing about fifteen feet from the corner. I saw *Mrs. Kielich* just when she got hit with the corner of the front radiator, when she fell down. The truck came from south to north. The front right wheel ran over her. I hollered to stop the machine. When the truck stopped, *Mrs. Kielich* was lying between rear and front wheel. I noticed a street car just before she was hit. That car passed. Did not see the truck before it hit *Mrs. Kielich*. There were a good many people there at that corner. It was light around 5 o'clock. I saw the car pass and the truck come across the street after the car had passed. The radiator, the right-hand side corner, struck *Mrs. Kielich*. The streets were dry at that time. I had been watching the medicine man on the corner. I was just going to walk away and then I saw the accident. The truck was driving slowly, along the east side of the roadway.

Joseph Kasmierczak testified:

I saw the accident on corner of Fifth avenue and Mitchell street at the time *Mrs. Kielich* was injured. I noticed *Mrs. Kielich* first when she was crossing the street shortly before the injury. The street car was going west and this truck came right in back as *Mrs. Kielich* was going across the street and the truck hit her, the front of the radiator. If the front wheel hit her I couldn't say, because I was too busy to try to get up in front of it, trying to stop the machine from going any further. I was one of the persons trying to stop the driver from going further and then I hollered and tried to pull this lady out, but I couldn't pull her out because the hind end of the wheel was on so tight that you couldn't pull her out without backing the truck. Her legs were under the truck and the body was under the truck. When the truck hit her she fell. I saw *Mrs. Kielich* take quite a few steps from the sidewalk before she and the truck came together. I should think she was about ten feet from the curb. I should judge the truck went about from five to ten miles. I wouldn't say it went over five miles an hour.

*Mrs. Kielich* had a fracture of both bones of the right

forearm and a severe crushing injury to the soft parts of the left thigh. She had lacerations of both elbows and other minor bruises. The injury to the left thigh resulted in a big blood-clot forming in the soft tissues, and this blood-clot ultimately broke down and became infected, necessitating drainage for many weeks. She complained of pain in her back all the time she was in the hospital, and it was difficult for her to lie because of the general muscular bruising that she had. She was pretty well bruised up all over.

The truck was a five and one-half ton truck, with two men sitting on it, and had a load of four or five hundred pounds. It had windows in the front and the view of the driver was unobstructed. On the part of the defendant the testimony showed that the truck started from a point somewhat south of Mitchell street, and came to a dead stop on Mitchell street because of the street car coming from the west. After the street car passed the driver went across the street to the north.

For the defendant, Jerry Shoemaker, the driver of the truck, testified:

I was driving north. It was light; dry weather, a little chilly; the front side curtain was down; I could see; there is three lights in the front curtain and one large light in the side curtain, that reaches way down. When that is down there is not a bit of interference with my ability to see. I drove as far as the crossing and there was a street car going east. I stopped until the car passed and then went right on, stopped completely. I was on the east side of the street four or five feet from the curb. As I approached the crosswalk I looked around and there was nobody in the way. The road was clear. I kept on going. I was about three feet this side of the crosswalk, two ladies on the sidewalk that I noticed; and then about fifteen feet from there was a medical man, he was selling medicine. He had quite a bunch around him, and there was one fellow ran out from his crowd that he had there and started to cross the street and there was no automobile going south on the other side. Then he pretty nearly ran into this and he came across and started to

run into me and then I had my emergency brake set and then my man on the back hollered, so I stopped and got off and walked around and there was a lady there. There was no-body on the north walk when I started to cross it. I sounded the horn before I started to cross the north crosswalk. The truck makes lots of noise. The chains always rattle. I was going three or four miles an hour. When the medical man told me in the presence of Mr. Campbell, who was with me and working with me on that day, that the front wheel of that truck ran over that woman, neither of us made any reply.

Mrs. Agnes Wolf testified:

I remember something of the accident. I came west on Mitchell and approached Fifth avenue. I was just ready to step down the curb when I seen the car going west, and as that car went by I heard a fellow blow his horn and I looked up and I stopped. I saw the truck coming when I stopped. There was nobody in front of me at that time. The truck went by me and then the truck went across that crossing. Somebody went right by me and I wanted to grab her and to hold her. I grabbed at her, and she went. I wouldn't say the wheel struck her, although I thought at that time it did. The woman that went ahead of me is the woman that was hurt. She passed me while I was standing there. The right side of the front of the car struck *Mrs. Kielich.*

John Campbell, who was riding on the truck with the driver, testified:

I was looking to the east and all at once I seen a woman step to the curb and seen another woman come in back and stepped off the curb. As she stepped off and made the first step I hollered, and this lady, whoever she was, started to grab this lady that stepped off in back, but I hollered first because I thought that by drawing her attention—she was looking in the opposite way, to the north—wasn't paying at-tention to what was to the south of her and in front of her at all. She had her head to the north where that fakir was. I hollered, and when she took the second step she walked into the body of the truck, and when I seen her take that step I hollered to the driver to stop and he stopped quick.

I couldn't take a solemn oath which part of the truck struck· her, or she struck the truck. It wasn't the wheel, though. It was the body of the truck, if at all.

The foregoing is a summary of the material parts of the evidence. It will be seen that there was evidence from which, if believed, the jury might have found that the driver of the truck ran into *Mrs. Kielich* while she was crossing Fifth avenue; that the driver had an unobstructed view; that his car was going slowly, and that he could have stopped it in time to have avoided the accident; that the street was more or less crowded, and the driver should have used care corresponding to the danger. This is sufficient from which the jury might have inferred negligence on the part of the driver.

There was evidence that, before attempting to cross Fifth avenue, *Mrs. Kielich* looked south but that her view was obstructed by the street car going in the same direction, and that she started to cross the street behind others who were crossing, and then looked north; that the street car was going faster than she, and as she got ten or fifteen feet into the street she again looked south and the auto was then close upon her, and she became paralyzed with fear and failed to get out of the way. There is abundance of evidence to show that the auto ran into the woman, although it was claimed that she ran into the auto. If the testimony of *Mrs. Kielich* is to be believed, the jury might properly draw the inference that she was in the exercise of ordinary care in crossing the street.

The unquestioned law of this state is that if there is any credible evidence to sustain the cause of a party, giving it the most favorable inference it will reasonably bear, then the questions of fact are for the jury. *Lewis v. Prien,* 98 Wis. 87, 73 N. W. 654; *Beyer v. St. Paul F. & M. Ins. Co.* 112 Wis. 138, 88 N. W. 57; *Allen v. Voje,* 114 Wis. 1, 89 N. W. 924; *Morgan v. Pleshek,* 120 Wis. 306, 97 N. W. 916; *Sanborn v. Walters,* 145 Wis. 84, 129 N. W. 644;

*Reul v. Wis. N. W. R. Co.* 166 Wis. 128, 133, 163 N. W. 189; *Behling v. Wis. B. & I. Co.* 158 Wis. 584, 149 N. W. 484; *Isgro v. Plankinton P. Co.* 176 Wis. 507, 186 N. W. 606.

For the reason that the case must go back for a new trial, we refrain from unnecessary comment on the evidence. It is sufficient to say that there is nothing incredible about the plaintiff's position—nothing impossible as to the physical facts. We think the evidence presented a jury question both as to defendant's negligence and contributory negligence of the plaintiff *Mrs. Kielich.*

*By the Court.*—The judgment of the circuit court is reversed, and the cause is remanded for a new trial.