PAPACOSTA (Rosemary Spellman), Plaintiff and Respondent, vs. PAPACOSTA (Gust) and another, Defendants and Appellants: DABSON and another, Defendants and Respondents.*

*October 10—November 5, 1957.*

* Motion for rehearing denied, with $25 costs, on January 7, 1958.

For the appellants there was a brief by *Schlotthauer & Jenswold* of Madison, and oral argument by *George McD. Schlotthauer*.

For the respondent Rosemary Spellman Papacosta there was a brief and oral argument by *Gene J. Fleming* of Madison.

For the respondents Robert Dabson and the Western Casualty & Surety Company there was a brief by *Godfrey & Godfrey* of Elkhorn, and oral argument by *Thomas G. Godfrey*.

BROWN, J. After the collision the plaintiff married the driver of the automobile in which she was a passenger but for convenience she will be referred to here as "Miss Spellman," which was her name at the time of the accident. The respective insurance companies are not necessary to a statement of facts material to this appeal and reference to them will be omitted.

The collision took place at a curve where Highway 12, running generally northwest and curving westerly, enters the city of Whitewater. Papacosta, with Miss Spellman as his guest, was driving on Highway 12 toward Whitewater. Driving on Highway 12 in the opposite direction was the defendant, Dabson. As Dabson entered the curve which, for him, bore to the right, he failed to stay in the right lane of traffic but crossed the center line, invading Papacosta's traffic lane and there collided with the Papacosta automobile. Dabson's speed was about 50 miles per hour and he fell asleep at the time when he entered the curve. His causal negligence, which the jury estimated at 85 per cent of the total, is conceded.

By a special verdict the jury found Papacosta guilty of 15 per cent causal negligence in management and control.

Papacosta testified that when he first saw the Dabson car he realized that it would not be able to make the curve and stay in its own lane at the speed at which it was traveling and that it did not slow down, yet Papacosta proceeded without change in his course and did not reduce his own speed which was 25 miles per hour.

A chart was received in evidence on which the positions of the two automobiles at various times were marked, as well

as the point of collision. From the diagram and the testimony Dabson's counsel is able to present a situation which the jury might accept that when Papacosta (against whom no negligence in lookout was found) first saw Dabson the automobiles were 145 feet apart and were approaching each other, Dabson at a speed of 23 1/3 miles per hour and Papacosta at a speed of 25 miles per hour, and these speeds did not change before the cars collided. Respondent Dabson also points out that at the place of collision there is a large parking lot in the east side of the highway into which Papacosta might have turned. At a combined speed of 48 1/3 mile per hour the initial distance between the cars of 145 feet would be reduced to zero in something less than three seconds.

Respondent-plaintiff's counsel arranges the statistics differently, accepting Dabson's speed at 50 miles per hour in order to charge Papacosta with early notice that Dabson could not round the curve properly. Starting from the standpoint of a known speed, he reasons that Papacosta first saw the Dabson car when it was 255 feet from him. At the speed so chosen the automobiles would consume that distance and collide in less than three seconds. Taking the most favorable distance, as urged by respondent-plaintiff, 255 feet, and the most favorable speed, as urged by respondent Dabson (23 1/3 miles per hour for Dabson and 25 miles per hour for Papacosta), the collision would occur in less than four seconds.

Papacosta relies on the emergency doctrine, *i.e.,* that a person faced with an emergency which his conduct did not create or help to create, is not guilty of negligence in the methods which he chose or failed to choose to avoid the threatened disaster.

There is the additional element that, while Papacosta knew when he first saw Dabson that because of Dabson's speed he would not round the curve properly, Papacosta had no knowledge of where Dabson would invade Papacosta's lane nor the extent of the invasion either in time or distance, or

whether Dabson would return to his own lane, remain in the Papacosta lane, or go off the east side of the highway.

Under such circumstances we consider it quite clear that Papacosta was faced with an emergency as a matter of law to which he did not contribute, and as a matter of law he is entitled to the protection of the emergency doctrine. The only negligence on the part of Papacosta found by the jury is that of management and control. Since at all times he was in the traffic lane to which he was entitled, by this finding the jury must have meant that when he was warned of danger he did not take appropriate means to escape collision. In the time he had for observation and action the selection of effective means would have been pure luck. It is only in retrospect that anyone may say his procedure was wrong or any given alternative would have produced better results. Under such circumstances the finding that he was negligent in management and control has no evidence to support it. The trial court should have granted the motion to change that answer.

With a changed answer Papacosta is absolved from all causal negligence and is entitled to judgment dismissing respondent Spellman's complaint as to him.

*By the Court.*—Judgment reversed, and cause remanded for further proceedings not inconsistent with this opinion.

FAIRCHILD, J. (*dissenting*). I would affirm the judgment. We have applied the emergency doctrine relied on here by the majority in such cases as *Havens v. Havens* (1954), 266 Wis. 282, 63 N. W. (2d) 86, and recently in *Le May v. Marks* (1957), 1 Wis. (2d) 487, 85 N. W. (2d) 360. Both were situations where the driver, found negligent by the jury as to management and control, was not negligent as to speed or lookout and was driving on his own side of the highway; was faced with a car approaching from the opposite direction on a straight road without notice of

any loss of control and with a quandary as to whether the oncoming car would continue in a straight course or revert to its own side. The controlling element in these cases is the propriety of the assumption that the oncoming driver will return to his own side of the road. The instant situation is substantially different in my opinion. There was evidence which would support the following propositions: Papacosta realized that the Dabson car was approaching the curve at a speed and with a momentum which would probably compel Dabson to proceed forward into a side road or swing off the main road onto the shoulder or parking lot on his wrong side. Successful rounding of the curve plus return to his own side of the road against his momentum would require an unlikely degree of effort. A maximum application of the brakes by Papacosta could have brought him to a stop in about 65 feet, or less than 2 seconds, and greatly reduced the chances of collision. The evidence accordingly supports the finding of causal negligence as to management and control.

In my opinion the emergency doctrine always tends to put the court in the position of trying the facts, and the majority is putting the court in that position here.