Schumacher, Respondent, v. Klabunde and another, Appellants.

*January 10—February 5, 1963.*

For the appellants there was a brief by *Kenney, Korf & Pfeil* of Elkhorn, and oral argument by *Francis J. Korf*.

For the respondent there was a brief by *Godfrey, Godfrey & Neshek* of Elkhorn, and oral argument by *Thomas G. Godfrey*.

WILKIE, J. The sole question on this appeal is whether the trial court erred in directing a verdict excusing Schumacher from negligence on the ground that Schumacher was confronted with an emergency as a matter of law.

Klabunde testified that he was returning from Madison and as he approached Whitewater, Wisconsin, he began to get sleepy. He then opened the window to ward off his drowsiness. Later, when he saw the Schumacher car, he dozed momentarily for a couple of seconds and as he opened his eyes he found that he was drifting into Schumacher's lane. At this time he testified his steering wheel was even with the center line on the highway which would mean that his car was from one and one half to two feet in the opposite lane. He was heading straight and not slanting farther into

the opposite lane. He immediately pulled back into his own lane of traffic. All of this took place when a distance of only 300 feet separated the two cars. He was going 45 miles per hour at the time and he estimated Schumacher was going at a high rate of speed.

After Klabunde's car returned to its own lane, and when the cars were 100 feet apart, Klabunde stated that the Schumacher car started to invade Klabunde's lane. At this time, Klabunde testified that he put his foot on the brake and pulled over to the right shoulder traveling a distance of 30 to 40 feet in the interim and reduced his speed from 45 miles per hour to 10 miles per hour. The cars then collided on Klabunde's side of the highway. The collision occurred with such force that Klabunde broke his steering wheel, and his auto was thrown eight to 10 feet backward, stopping in his own lane of traffic, angling toward the west shoulder.

Schumacher's car on the other hand went through the west ditch (which would be on Klabunde's side of the road) then back across the highway and onto the east shoulder of the road where it stopped some 328 feet north of Klabunde's auto.

Schumacher testified that he was going 25 miles per hour at the time he first saw the Klabunde car, which he agreed was approaching at 45 miles per hour. At the time of the impact, Schumacher said he was only traveling about five miles per hour.

On the night in question, Klabunde had nothing to drink, while on the other hand, testimony established that Schumacher had had three or four beers while bowling, and four more beers after he had finished bowling. Schumacher was at the bowling alley from 7:30 until 12, at which time he stated he went to a cafe and had a snack before driving home. At an adverse examination, Schumacher testified that he left the restaurant at 12:30 and that the accident happened at 12:35, when in fact it occurred at 1:30. He also

testified that he did not see or talk to Klabunde after the collision occurred, while Klabunde testified that he went to the Schumacher auto, asked him if he was injured, and turned off his ignition. Klabunde stated that Schumacher did not respond to his questions.

Schumacher further testified that when he saw the Klabunde auto 300 feet away, he took his foot off the accelerator, and at a distance of 100 feet, applied his brakes. During that 200 feet, Schumacher said Klabunde was continually drifting into his lane of traffic. When the Klabunde auto was 100 feet away, Schumacher turned to his left into Klabunde's lane. At the adverse, Schumacher stated that he was at a complete stop when he turned into the opposite lane. However, he did not have his foot on the brake at the time of impact, but it was on the accelerator. He said, however, that his car did not speed up following the impact. Schumacher did not know how his vehicle got around the Klabunde auto.

Schumacher also testified that when he first saw Klabunde he was in his own lane. He watched the Klabunde car continuously from the time it was 2,000 feet away until the collision. Just before Klabunde was 300 feet away, Klabunde crossed the center line and even came over with the left wheels of his car on the east shoulder before Klabunde swerved back sharply to his own side of the road. At another point Schumacher testified that it was when Klabunde was only 100 feet away he came over onto the wrong shoulder. At still another point Schumacher testified that the Klabunde car invaded his lane when 200 feet away.

At the conclusion of the trial, the trial court directed a verdict excusing Schumacher, stating:

"At 300 feet on Mr. Klabunde's own story he was straddling the center line a foot and a half to two feet and into Mr. Schumacher's lane of traffic going 45 miles an hour. Mr. Schumacher's testimony was at that time he was going 25 miles an hour so there is a combined speed of 70 miles an

hour and a closing of the gap in less than three seconds. If I read the *Papacosta Case* correctly it answers the arguments you have made and which I adopted in that case and I was reversed. You state Mr. Schumacher could have done something—he could have stopped or stayed in his own lane and this wouldn't have happened, and the supreme court said in reversing me that was hindsight. They said that whenever you get a situation of a three-second lapse of time you just cannot find a driver such as Mr. Schumacher negligent with respect to management and control. . . . I don't think there is any record to support negligent lookout or speed. There is no testimony in the plaintiff's case to show how long a period of time Klabunde was straddling the center line and therefore it seems to me that on the plaintiff's case there is no basis for the jury to find Schumacher negligent as to lookout without involving speculation as to the length of time of the invasion of his lane by Klabunde."

It is well established that "in determining whether or not the trial court was in error in directing the verdict, this court must take that view of the evidence which is most favorable to the party against whom the verdict is directed." *Mueller v. O'Leary* (1935), 216 Wis. 585, 587, 257 N. W. 161.

This is the standard to be applied here in reviewing the trial court's directed verdict.

In *Papacosta v. Papacosta* (1957), 2 Wis. (2d) 175, 85 N. W. (2d) 790, the distance separating the two vehicles was 255 feet and the most-favorable speed was 23½ miles per hour for one party and 25 miles per hour for the other. The court reasoned that under these facts the gap would be closed within four seconds at which time the collision would occur. The jury had found the defendant Papacosta negligent as to management and control. In reversing the lower court this court held that as a matter of law Papacosta could not have been guilty of negligence at all because of the emergency doctrine and reversed the jury's finding of negligence as to management and control. The court said, at page 179:

"Under such circumstances we consider it quite clear that Papacosta was faced with an emergency as a matter of law

to which he did not contribute, and as a matter of law he is entitled to the protection of the emergency doctrine."

In other cases we have held that there was an emergency as a matter of law where the opposing car invaded the opposite lane of traffic, without warning, and at such speed and distance that the confronted driver, who had not in any way, through act or failure to act, contributed to produce the emergency, had no time for considered action.[1]

We have held to the contrary that there was no emergency as a matter of law in situations where the time span was such that the confronted driver did have time for considered action.[2]

In the instant case, the majority of the court is of the opinion that no fact question was presented as to whether Schumacher was confronted by an emergency. Proceeding in his own lane of traffic at the lawful speed of 25 miles per hour, he first observed Klabunde enter Schumacher's lane of traffic, going 45 miles per hour at a distance of 300 feet away. Klabunde said he was one and one half or two feet in Schumacher's lane and this would leave eight feet of pavement plus four feet of shoulder to get by. This would assume that Klabunde would not veer over any more and that Schumacher could steer around him. Moreover, this was at night, and what might have been probable in daylight is no standard for what may be observed and done in the dark of night. Klabunde admitted invading Schumacher's lane. Both drivers agreed he was going 45 miles per hour at the time. The trial court was correct in concluding that the gap would be closed in three seconds.

---

[1] *Martell v. Klingman* (1960), 11 Wis. (2d) 296, 105 N. W. (2d) 446; *Le May v. Marks* (1957), 1 Wis. (2d) 487, 85 N. W. (2d) 360; *Clark v. Mutual Automobile Ins. Co.* (1957), 1 Wis. (2d) 357, 83 N. W. (2d) 873; *Havens v. Havens* (1954), 266 Wis. 282, 63 N. W. (2d) 86.

[2] *Crossman v. Gipp* (1962), 17 Wis. (2d) 54, 115 N. W. (2d) 547.

We cannot consider the reduced speeds of the cars in the interval between the point when they were 300 feet apart and the collision. In determining whether or not there was an emergency, this court said in *Rude v. Algiers* (1960), 11 Wis. (2d) 471, 105 N. W. (2d) 825, at page 479:

"It is the forward speed of both vehicles, together with the distance they are apart when the one begins to veer into the other lane, which are the determining factors."

Thus it is the speed of the two cars when they were 300 feet apart and Klabunde slid over into Schumacher's lane that must be considered in determining whether Schumacher was then confronted with an emergency. We must hold that the trial court was correct in ruling that Schumacher was confronted with an emergency as a matter of law and that therefore he could not be found negligent as to management and control.

*By the Court.*—Judgment affirmed.

DIETERICH, J., dissents.