CITY OF MILWAUKEE, Respondent, v. BICHEL, Appellant.

*April 12—May 9, 1967.*

68

For the appellant there was a brief and oral argument by *Edwin C. Rachow* of Milwaukee.

For the respondent there was a brief by *John J. Fleming*, city attorney, and *Theophilus C. Crockett*, assistant city attorney, and oral argument by *Mr. Crockett*.

HEFFERNAN, J.   A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in evidence, there is but one inference or conclusion that can be reached by a reasonable man. 1 Wisconsin Continuing Legal Education 125.  In this case the trial judge concluded that the facts before him warranted the directed verdict of "guilty."  He made no analysis of the evidence in a memorandum opinion, so we do not have the benefit of his thinking at the time he made his decision.  We, therefore, are obliged to review the evidence *ab initio* to determine whether the trial court's action was proper.  In making such a review, we are obliged to take that view of the evidence which is most favorable to the party against whom the verdict is directed. *Schumacher v. Klabunde* (1963), 19 Wis. (2d) 83, 87, 119 N. W. (2d) 457; *Mueller v. O'Leary* (1935), 216 Wis. 585, 587, 257 N. W. 161.  And if there is any evidence to

sustain a defense, the case must be submitted to the jury. *Kielich v. Whittaker* (1924), 183 Wis. 470, 476, 198 N. W. 270. In other words, if this case had gone to the jury and an acquittal resulted, could the verdict, remembering that this is a civil action for the enforcement of a municipal ordinance, be sustained?

Clearly, there was evidence that could have supported a jury's verdict of guilty. The alcohol test of .31 of one percent was substantially in excess of the minimum specified by sec. 885.235 (1), Stats., as *prima facie* evidence of intoxication. Moreover, there was considerable corroborating evidence of intoxication. The police officer testified that the driver was proceeding in the wrong direction on a one-way street and that Bichel did not appear alert, he was unsteady and had to hang onto the door of the car when he stepped out, he stumbled and staggered, his speech was slurred, he was abusive and belligerent, his eyes were bloodshot and watery, he lost his balance, and he did not know what time it was. Perhaps most damaging—in a year of a National Football League championship and the first world championship, the "Super Bowl"—the officer stated, "he'd get right up in front of me with his chin right up against me and started to run down the Packers and Bart Starr." The officer testified that, on the basis of his observation and his previous experience with persons who had been drinking, "He was drunk in my opinion." As the trial judge correctly pointed out, *Milwaukee v. Johnston* (1963), 21 Wis. 411, 414, 124 N. W. 690, stands for the proposition that:

" '[A] lay witness, who has the opportunity to observe the facts upon which he bases his opinion, may give his opinion whether a person at a particular time was or was not intoxicated.' "

That case further points out that "The evaluation of the opinion of such a witness is for the trier of the facts." *Supra,* page 415.

While the facts thus stated would support a verdict of guilty, they are the facts adduced that are most *un*favorable to the defendant, while we are obliged to consider the facts that are most favorable to him (cases cited *supra*).

While there is some dispute about the time some of the relevant incidents occurred, it is reasonably clear that the defendant was apprehended at about 2:10 a. m. and was engaged in a conversation on the street with the police for a period of twenty minutes, a urine sample was given at the station at 2:55 a. m., and by 3:25 a. m. the officer testified that he had completed writing up his report.

While the officer testified that the defendant was so disoriented that he was "staggering about all over the place" and, hence, was given no test at the scene, it is uncontradicted that at the station, only a few minutes later, he was "cooperative," his choice of words was "fair," his clothes were "orderly," the odor of alcohol was "moderate," and he was able to pick up coins from the floor though he was "slow." While this testimony could still be corroborative of a blood-alcohol test under sec. 885.235 (1) (c), Stats., it is hardly descriptive of a completely uncoordinated, bumbling drunkard. It is inconsistent with the officer's testimony in regard to defendant's conduct only a few minutes earlier.

Bichel testified that he only had four drinks in a period of eight hours prior to his arrest, two of which were consumed prior to 8 p. m. and two about midnight. He explained that he always holds onto a car door when getting out and that his stumbling was the result of nervousness induced by pills prescribed for the treatment of his ulcer. He stated that the pills "had tremendous physical effects on me . . . . I couldn't think, I couldn't remember stuff, and I was just nervous, in fact I almost had a nervous breakdown with them." He asserted that the pills made him act the way he did at the time of the arrest, although he had not taken any pills for several

hours and there was no evidence that he was, at the time, under the influence of the drugs.

Also there was introduced into evidence a statement of the defendant's physician that he had recently been hospitalized for an active duodenal ulcer and that he had been taking drugs that would induce an "excessive reaction" to alcohol. The physician stated:

"It is my opinion . . . that if Mr. Bichel had even one or two drinks . . . that these reactions might be those of one who had consumed a considerable[ly] larger quantity of alcohol."

Thus, taking the evidence most favorable to the defendant, there was evidence of a reasonably sober response to physical tests, and there was no evidence of erratic driving (other than his driving in the wrong direction on a one-way street). The odor of alcohol was moderate, and the defendant offered evidence to show that his conduct, to the extent it was abnormal, was the result of the medicine he was taking. There was evidence which, if believed, could induce the jury to conclude that only two drinks had been consumed within the time that the expert testimony indicated would result in the showing of any alcohol in the blood. There was also some evidence that, to a small degree, cast doubt upon the accuracy of the blood-alcohol test.

On the basis of the evidence before us, we would have no difficulty in sustaining a jury's verdict of guilty or, if tried to the court, the judge's decision to that effect. It is apparent that a finding of guilty would not be contrary to the great weight and clear preponderance of the evidence. However, that is not the test used when the judge determines that there is no fact issue and takes the case from the jury and directs the verdict as a matter of law. We have said that a case should be taken away from a jury:

" ' ". . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence

is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion." ' " *Anderson v. Joint School Dist.* (1964), 24 Wis. (2d) 580, 583, 129 N. W. (2d) 545, 130 N. W. (2d) 105, citing *Rusch v. Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405, and *Smith v. Pabst* (1940), 233 Wis. 489, 288 N. W. 780.

As set forth, some material matters in evidence were disputed, and had the jury elected to believe the defendant's version of the facts, we would not have been obliged to set a verdict of "not guilty" aside. The defendant's evidence on its face was not patently incredible, and in such a case the weight and sufficiency of it are for the jury (*Jolitz v. Fintch* (1938), 229 Wis. 256, 261, 282 N. W. 87), as is, of course, the credibility of the evidence and the inferences to be drawn therefrom (*Braatz v. Continental Casualty Co.* (1956), 272 Wis. 479, 487, 76 N. W. (2d) 303). In that case we restated the proposition set forth in *Trautmann v. Charles Schefft & Sons Co.* (1930), 201 Wis. 113, 115, 228 N. W. 741:

" 'The rule is well established that if evidence is conflicting, or if the inferences to be drawn from the credible evidence are doubtful and uncertain, and there is any credible evidence which under any reasonable view will support or admit of an inference either for or against the claim or contention of any party, then the rule that the proper inference to be drawn therefrom is a question for the jury should be firmly adhered to, and the court should not assume to answer such question either upon a motion for nonsuit or direction of verdict, or by substituting another answer after the verdict is returned.' "

The testimony supporting the defendant was not inherently incredible as being in conflict with the uniform course of nature or with fully established or conceded facts (*Davis v. Skille* (1961), 12 Wis. (2d) 482, 485, 107 N. W. (2d) 458; *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 115, 31 N. W. (2d) 156) and, hence, might properly have been believed by a jury.

This case should have been submitted to the jury that had listened to the evidence for two days. Although, under a similar set of facts, we undoubtedly would sustain a finding of guilty (see *Madison v. Walker* (1965), 28 Wis. (2d) 469, 137 N. W. (2d) 410), this set of facts did not reach the jury, and we are obliged here to reverse the judgment and remand for a new trial. Recently, in *Koczka v. Hardware Dealers Mut. Fire Ins. Co.* (1966), 29 Wis. (2d) 395, 138 N. W. (2d) 737, we reiterated the practice to be followed where the trial judge is obliged to rule on a motion for a directed verdict. Had the suggested practice of reserving the ruling until after the jury's verdict was returned been followed in this case, it appears likely that the motion would have been resolved and the necessity of a new trial avoided. As we said in *Davis v. Skille* (1961), 12 Wis. (2d) 482, 490, 107 N. W. (2d) 458, and reiterated verbatim in *Schiller v. Keuffel & Esser Co.* (1963), 21 Wis. (2d) 545, 554, 124 N. W. (2d) 646, and *Koczka v. Hardware Dealers Mut. Fire Ins. Co., supra,* p. 400:

"It is to be regretted that the circuit court did not reserve its ruling on the motion for directed verdict until after the jury had returned its special verdict. By so doing, even though the court after the return of the verdict did see fit to have granted the motion, there would now be no necessity of granting a new trial. We do not advocate that such procedure invariably be followed, but in close cases we deem it to be preferable."

*By the Court.*—Judgment reversed, and cause remanded for a new trial.