PHOENIX INSURANCE COMPANY OF CONNECTICUT and WORACK and wife, Plaintiffs and Appellants, v. WISCONSIN SOUTHERN GAS COMPANY, Defendant and Respondent. [Case No. 33.] *

PELZ and another, Plaintiffs and Appellants, v. WORACK and wife and WISCONSIN SOUTHERN GAS COMPANY, Defendants and Respondents. [Case No. 34.] *

*Nos. 33, 34. Argued November 24, 1969.—Decided February 3, 1970.*
(Also reported in 173 N. W. 2d 610.)

* Motions for rehearing denied, with costs, on March 31, 1970.

482

For the appellant Phoenix Insurance Company of Connecticut (Case No. 33) there was a brief by *Wolfe, O'Leary, Kenney & Wolfe* of Milwaukee, and oral argument by *Z. F. O'Leary*.

For the appellants Mark and Carl Pelz (Case No. 34) there were briefs by *Brown, Black & Riegelman* of Racine, and oral argument by *Dexter D. Black* and *Harley Brown*.

For the respondent Wisconsin Southern Gas Company (Case Nos. 33 and 34) there was a brief by *Aberg, Bell, Blake & Metzner* of Madison, and oral argument by *Carroll E. Metzner*.

For the respondents (Case No. 34) there was a brief by *Heide, Sheldon, Hartley, Thom & Wilk* and *William A. Sheldon,* all of Kenosha, attorneys for Frederick P. and Georgia R. Worack, and of counsel for the Phoenix Insurance Company of Connecticut, and oral argument by *William A. Sheldon.*

CONNOR T. HANSEN, J.   The principal issue is whether it was prejudicial error to grant the motion of the respondent, Wisconsin Southern Gas Company, for a directed verdict and to dismiss both actions as to the gas company.

There are other issues which will be referred to in the course of the opinion.

The standard by which this court will review decisions on motions for a directed verdict are set forth in *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 699, 151 N. W. 2d 741:

"In determining whether or not the trial court was in error in failing to direct the verdict, this court must take that view of the evidence which is most favorable to the party (the plaintiff in this case) against whom the verdict was sought to be directed. *Schumacher v. Klabunde* (1963), 19 Wis. (2d) 83, 87, 119 N. W. (2d) 457; *Mueller v. O'Leary* (1935), 216 Wis. 585, 587, 257 N. W. 161. If there is any evidence to sustain a defense or a cause of action, the case must be submitted to the jury. *Kielich v. Whittaker* (1924), 183 Wis. 470, 198 N. W. 270. The weight and sufficiency of the evidence is for the jury (Jolitz v. Fintch (1938), 229 Wis. 256, 261, 282 N. W. 87), as is the weight to be given to the witness' positive or negative testimony. *Conrardy v. Sheboygan County* (1956), 273 Wis. 78, 82, 76 N. W. (2d) 560. Furthermore, it is basic that the credibility of the evidence and the inferences to be drawn therefrom are matters for the jury. *Braatz v. Continental Casualty Co.* (1956), 272 Wis. 479, 487, 76 N. W. (2d) 303. If there is any evidence other than mere conjecture or incredible evidence to support a contrary verdict, the case must go to the jury. *Larson v. Splett* (1954), 267 Wis. 473, 66 N. W. (2d) 181. Incredible evidence is evidence in conflict with the uniform course of nature or with

fully established or conceded facts. *Davis v. Skille* (1961), 12 Wis. (2d) 482, 107 N. W. (2d) 458; *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 31 N. W. (2d) 156."

In viewing the evidence most favorable to the appellants, as we must, we are of the opinion that the record does contain sufficient credible evidence to support the jury finding that the gas company was negligent. This negligence was as to the manner of the installation of the gas pressure regulator. We are convinced that this finding is not based upon speculation and conjecture.

It appears without dispute that the gas pressure regulator malfunctioned and that this malfunction was the principal cause of the explosion and resulting damage. It further clearly appears that the malfunction was caused by an accumulation of water which froze so as to prohibit the necessary movement of the moving parts which, in turn, permitted gas to enter the fixtures at a pressure greatly in excess of their tolerable range, causing the highly explosive gas to escape and which did explode when Pelz lit the match.

The regulator was the property of the gas company and was installed by it. The gas company intended to and did have the exclusive right to control and maintain the regulator. This is further evidenced by the wire seal on the valve-adjusting cap.

As between the parties involved, the Pelzes, Woracks, and the gas company, only the gas company had the right to maintain the regulator. The probabilities are that the appellants knew nothing of its function, its construction or maintenance. In any event, there is no evidence that any of the appellants in any way interfered with the regulator either before or after the explosion.

From the positive evidence of the manufacturer's bulletin, and the testimony of the experts, the jury could conclude that it was poor engineering practice and negligence to install the regulator with the relief-valve-inlet

and vent in an upright position. Both the bulletin and the plaintiffs' experts agree that the moisture problem and possible malfunction are eliminated by inverting the regulator so that the moisture drains out by gravity.

We do not believe the fact that it could not be determined exactly how much water, and in turn how much ice, was in the regulator at the time of the explosion relegates the proof to unacceptable speculation or conjecture.

At the midnight hour the appliances and, consequently, the regulator were operating properly. After midnight the temperature dropped below freezing and before 8 a. m., the regulator and the appliances were seriously malfunctioning and the explosion occurred.

The regulator was installed outside near the eaves of the building. It had been raining the night before.

Regardless of the source of the water in the regulator, if it had been installed in an inverted position as recommended by the manufacturer the water or moisture would have drained to the extent that ice accumulation would not have caused the malfunction.

We are of the opinion the jury could find, based upon reasonable inferences, that the gas company could reasonably foresee that moisture could accumulate in the gas pressure regulator because of the position in which it was installed, and that the moisture could freeze and cause a malfunction of the regulator and a dangerous hazard to the users of its natural gas.

The gas company introduced a considerable amount of evidence to show that it was customary in the industry to install gas pressure regulators outside, with the vents in an upright position. It cites *Raim v. Ventura* (1962), 16 Wis. 2d 67, 72, 73, 113 N. W. 2d 827, as authority for the proposition that "where there is an avalanche of acceptability of a custom or usage, and where such general practice contravenes no established law, public policy,

or common sense, it may be persuasive as to what is a rule of reason in a safe-place case."

*Raim* goes on to quote the common-law rule as follows, at page 73:

" 'The proper standard of defendant's duty was the care which the great mass of mankind ordinarily exercise under the same or similar circumstances. Now and then it appears that the customary way of doing things is utterly disregardful of personal safety, where it is said, the mere fact that the way adopted was the customary way, is not a defense against the claim of liability. They are very extreme cases, quite different from one where men of judgment and experience commonly for a long time have been accustomed to arrange premises and instrumentalities for an ordinary business enterprise like a railroad, in a particular way, found by experience to be reasonably safe and convenient.' *Jensen v. Wisconsin Central R. Co.* (1911), 145 Wis. 326, 335, 128 N. W. 982."

In this instance, where the descriptive installation and maintenance bulletin of the company that manufactured the regulator and testimony of experts both stated the regulator should be installed in an inverted position, a custom to the contrary cannot require a finding, as a matter of law, that the installation was not negligent.

The gas company also ardently contends that the malfunction of the regulator was caused by the vandalous act of another person and as such constituted an intervening superseding cause which relieves it of responsibility.

In support of its claim of vandalism it points to the evidence which reveals that the cap over the valve-adjusting-screw-inlet was gone and the seal broken; that there was ice (as much as two to three inches) over this area of the regulator; and that when the regulator was taken apart it had 16 ounces of water in it, together with debris consisting of a small piece of a leaf, a small fragment of cardboard, and sand or dirt.

A thorough reading of the transcript (probably not available to the trial judge) reveals that two employees of the gas company, within a matter of minutes of the explosion, viewed the regulator and neither testified the valve cap was missing; both testified the regulator had a thin coat of ice on it but not that ice was built up around the valve inlet as stated in the trial court's memorandum opinion. One of the employees, a Mr. Kube, removed the meter and the regulator from the line within minutes after the explosion,—water from fire hoses was falling in this area; the regulator was placed alongside the building and some two hours later it was noticed the valve-inlet-cap was missing and the regulator covered with ice. The gas company employees then, without consent of the fire chief, took the regulator to their shop.

When and who removed the valve-inlet-cap is a matter of speculation; when the 16 ounces of water and the small amount of debris got into the regulator is also a matter of speculation and conjecture and, further, there is no proof there was 16 ounces of water in the regulator when the malfunction occurred.

As stated above, the regulator was operating properly at midnight and was not at 8 a. m. The evidence offered as to vandalism or tampering is too speculative to raise an issue of an intervening superseding cause.

Because we have concluded that the evidence is sufficient, and permissible inferences are sufficient to permit a finding of negligence on the part of the gas company, we do not reach the contention that the doctrine of *res ipsa loquitur* applies.

The appellants-Woracks contend there is no evidence sufficient to permit a jury finding of negligence on their part. Without an elaborate discussion of the evidence it is sufficient to state that it appears the Woracks had at least one-half hour in which they were aware that something was wrong with the gas supply, namely that much more gas was coming through the appliances than

there normally should be. Reasonable caution should require them to notify their guests as to this condition and danger. In all probability, had Pelz been notified he would not have struck the match and neither he nor the property would have been damaged. The jury was justified in finding their failure to do so constituted causal negligence.

The trial court awarded a new trial to the Woracks in the interest of justice because of both the comparative negligence finding and the damages awarded to Mark Pelz.

It is entirely understandable that a new trial in the interest of justice was awarded to the Woracks after the verdict was directed for the gas company. The verdict was left with a finding of 14 percent of the causal negligence attributable to the Woracks and one percent to Mark Pelz.

The trial court also determined that the damages awarded to Mark Pelz in the amount of $80,000 for his personal injuries were excessive because of his remarkable recovery and limited residuals. This was an additional reason for the new trial in the interest of justice.

In our opinion the verdict in both cases should be reinstated as to negligence, causation and comparative causal negligence as found by the jury, and both cases should be remanded for a determination of damages. The property damage suffered by the Woracks and their subrogee, Phoenix Insurance Company, should be determined, and the damages of Mark Pelz should be viewed on the record, with a *Powers* rule option or a new trial limited to damages awarded to the plaintiff Mark Pelz.

*By the Court.*—Judgments reversed in part and affirmed in part and remanded for further proceedings consistent with this opinion. Plaintiffs in both actions to tax costs against defendant Wisconsin Southern Gas Company.