TOMBAL, Respondent, v. FARMERS INSURANCE EXCHANGE
and another, Appellants.

*No. 180. Argued January 2, 1974.—Decided February 5, 1974.*
(Also reported in 214 N. W. 2d 291.)

For the appellant there was a brief by *Everson, Whitney, O'Melia, Everson & Brehm, S. C.,* of Green Bay, and oral argument by *Stephen J. Everson.*

For the respondent there was a brief by *Bittner, Petitjean & Hinkfuss* of Green Bay, and oral argument by *Robert L. Bittner.*

BEILFUSS, J. Two issues are presented in this appeal:

1. Did the court err in directing a verdict for the plaintiff as to liability issues?

2. Were the damages awarded by the jury excessive?

At 3 p. m., on Saturday, November 8, 1969, at the intersection of University Avenue and Henry Street in the city of Green Bay, a collision occurred between a 1962 Rambler sedan driven by the plaintiff-respondent, Mrs. Tombal, and a 1969 Ford station wagon driven by the defendant-appellant, Mrs. McKee. University Avenue is an arterial highway, 46 feet wide from curb line to curb line, and runs in an east-west direction. Henry Street is 36 feet wide and runs in a north-south direction. The streets intersect at right angles and the view, insofar as material here, is unobstructed. The streets are straight and level. On Henry Street there are two stop signs about eight feet back of the intersection. One is at the curb line northwest of the intersection to signal drivers coming from the north, the other in the southeast corner. There is also an overhanging flashing signal in the center of the intersection. It flashes red for the north-south traffic on Henry Street and amber for the east-west traffic on

University Avenue. The streets were dry and the weather clear. The volume of traffic at the time in question was comparatively light.

Mrs. Tombal was traveling east on University Avenue and Mrs. McKee south on Henry Street.

Mrs. McKee stopped at the stop sign north of University Avenue, waited for a car to pass through the intersection traveling from east to west, looked both ways, saw nothing and proceeded slowly into the intersection. Her maximum speed before the collision was from five to 10 miles per hour. At no time prior to the impact did Mrs. McKee see the Tombal vehicle.

The collision occurred in the southwest quadrant of the intersection. The major damage to Mrs. McKee's vehicle was to the right front fender and right door; the damage to the Tombal vehicle was to its front end. The impact forced or pushed the McKee vehicle to the southeast corner of the intersection. Sliding or sideways-type tire skid marks were left on the pavement by the McKee vehicle. There were no skid marks attributable to the Tombal car either before or after the point of impact.

Mrs. Tombal's speed for a considerable distance from the point of impact was 20 to 25 miles per hour and there was no appreciable reduction in speed before the impact. She testified that when she was about two car lengths from the intersection she saw the McKee vehicle stopped at the stop sign and when she was about one car length from the intersection saw the McKee vehicle moving into the intersection. Mrs. Tombal had her headlights on and there is some testimony she blinked them. She also testified that just before the impact she applied her brakes and attempted to turn to the right but could not do so. Her vehicle did not deviate from its lane of travel before the impact.

From this evidence, upon motion by Mrs. Tombal's counsel, the trial court correctly found, as a matter of

law, that Mrs. McKee was causally negligent as to lookout and failure to yield the right-of-way. The trial court further found that Mrs. Tombal was not negligent as to lookout, speed or management and control and, accordingly, directed the verdict for Mrs. Tombal on the liability issue.

"A case should be taken from the jury and a verdict directed against a party:

" ' ". . . only when the evidence gives rise to no dispute as to the material issues or only when the evidence is so clear and convincing as reasonably to permit unbiased and impartial minds to come to but one conclusion." ' *Anderson v. Joint School Dist.* (1964), 24 Wis. (2d) 580, 583, 129 N. W. (2d) 545, 130 N. W. (2d) 105, citing *Smith v. Pabst* (1940), 233 Wis. 489, 288 N. W. 780, and *Rusch Sentinel-News Co.* (1933), 212 Wis. 530, 533, 250 N. W. 405.

"Also:

" 'A verdict ought to be directed if, taking into consideration all the facts and circumstances as they appear in evidence, there is but one inference or conclusion that can be reached by a reasonable man.' *Milwaukee v. Bichel,* ante, p. 66, 150 N. W. (2d) 419.

"In determining whether or not the trial court was in error in failing to direct the verdict, this court must take that view of the evidence which is most favorable to the party . . . against whom the verdict was sought to be directed. *Schumacher v. Klabunde* (1963), 19 Wis. (2d) 83, 87, 119 N. W. (2d) 457; *Mueller v. O'Leary* (1935), 216 Wis. 585, 587, 257 N. W. 161. If there is any evidence to sustain a defense or a cause of action, the case must be submitted to the jury. *Kielich v. Whittaker* (1924), 183 Wis. 470, 198 N. W. 270. The weight and sufficiency of the evidence is for the jury *(Jolitz v. Fintch* (1938), 229 Wis. 256, 261, 282 N. W. 87), as is the weight to be given to the witness' positive or negative testimony. *Conrardy v. Sheboygan County* (1956), 273 Wis. 78, 82, 76 N. W. (2d) 560. Furthermore, it is basic that the credibility of the evidence and the inferences to be drawn therefrom are matters for the jury. *Braatz v. Continental Casualty Co.* (1956), 272 Wis. 479, 487, 76 N. W. (2d) 303. If there is any evidence other than mere conjecture or incredible evidence to support a contrary verdict, the case must go to the jury. *Larson v. Splett* (1954), 267 Wis. 473, 66

N. W. (2d) 181. Incredible evidence is evidence in conflict with the uniform course of nature or with fully established or conceded facts. *Davis v. Skille* (1961), 12 Wis. (2d) 482, 107 N. W. (2d) 458; *Czerniakowski v. National Ice & Coal Co.* (1948), 252 Wis. 112, 31 N. W. (2d) 156." *Zillmer v. Miglautsch* (1967), 35 Wis. 2d 691, 698, 699, 151 N. W. 2d 741. *See also: Phoenix Ins. Co. v. Wisconsin Southern Gas Co.* (1970), 45 Wis. 2d 471, 484, 485, 173 N. W. 2d 610.

In directing a verdict, the trial court must " '. . . view the evidence in the light most favorable to the party moved against . . . .' " *Bentzler v. Braun* (1967), 34 Wis. 2d 362, 370, 149 N. W. 2d 626.

The law is further clear that:

" '. . . while one may have the right-of-way and may presume others will respect it, he may nevertheless be negligent in respect to management and control if his right-of-way is not respected and he does not do what he can do to prevent the accident.' " *Chille v. Howell* (1967), 34 Wis. 2d 491, 497, 149 N. W. 2d 600.

In recognition of this principle, Mrs. McKee's counsel argues there is credible evidence, if believed, that would support a finding that Mrs. Tombal was negligent in failing to apply her brakes, change her course of travel, sound her horn and in not increasing her caution or vigilance as required because of the warning afforded by the flashing amber light.

The trial court was of the opinion that because Mrs. Tombal had the right-of-way and saw Mrs. McKee's vehicle stopped, she had the right to assume Mrs. McKee would respect her right-of-way and when it was apparent that Mrs. McKee was not going to yield to Mrs. Tombal, she was confronted with an emergency not of her own making without sufficient time to take any effective defensive action that would avoid the collision. The trial court concluded, as a matter of law, that Mrs. Tombal was entitled to the emergency doctrine as to management and control and that there was no other evidence of any negligence on her part.

The emergency doctrine is set forth as follows:

"The doctrine, as stated in *Papacosta v. Papacosta* (1957), 2 Wis. 2d 175, 85 N. W. 2d 790, is that a person faced with an emergency which his conduct did not create or help to create is not guilty of negligence in the methods he chose, or failed to choose, to avoid the threatened disaster if he is compelled to act instantly without time for reflection." *Seif v. Turowski* (1970), 49 Wis. 2d 15, 23, 181 N. W. 2d 388.

This court went on to say in *Seif, supra,* at page 24:

". . . While the time factor is, of course, very important in determining whether a driver is entitled to the doctrine as a matter of law, it is not to be applied in a 'stop-watch' fashion. All of the pertinent facts and circumstances surrounding the accident and the driver's opportunity to respond to the danger must be considered. Several seconds in one instance might entitle the actor to the emergency doctrine as a matter of law, and a lesser time interval under different circumstances might not. It is only when, under all of the pertinent or material circumstances, the time interval is so short that reaction is practically instinctive or intuitive that the emergency doctrine can be applied as a matter of law."

Three conditions must be met to invoke the emergency doctrine:

" '(1) The party seeking its benefits must be free from the negligence which contributed to the creation of the emergency; (2) the time element in which action is required must be short enough to preclude the deliberate and intelligent choice of action; and (3) the element of negligence inquired into must concern management and control.' *Edeler v. O'Brien* (1968), 38 Wis. 2d 691, 697, 698, 158 N. W. 2d 301. . . ." *Menge v. State Farm Mut. Automobile Ins. Co.* (1969), 41 Wis. 2d 578, 582, 583, 164 N. W. 2d 495.

Counsel for the defendants-appellants argues that from physical facts as they appear in the evidence as to distances traveled and the speed of both cars, and the stopping time and distance as revealed by a driver's manual

admitted in evidence, an inference could be drawn by the jury that Mrs. Tombal had sufficient time in which to react so as to avoid the collision. The trial court thoroughly considered this evidence and concluded that Mrs. Tombal had no more than a second or two to react after she had seen the McKee vehicle in a stopped position and thereafter saw it move into the intersection, and that under these facts Mrs. Tombal was faced with an emergency, not of her making, without time to effectively react and was entitled to the emergency doctrine as a matter of law exonerating her from any negligence. We believe this was a correct analysis of the facts and law and that the trial court was not in error in directing the verdict.

There is some dispute between the parties as to the legal duty of Mrs. Tombal to blow her horn and her duty to exercise increased caution because of the flashing amber light.

In the exercise of ordinary care there clearly is an obligation to blow the vehicle's horn under some circumstances,[1] notwithstanding the statutory safety rule as to use of a horn. We will not discuss the matter further here because the time interval available to Mrs. Tombal blowing the horn would have been completely ineffective.

*Seitz v. Seitz* (1967), 35 Wis. 2d 282, 297, 151 N. W. 2d 86, unequivocally holds that a motorist with the right-of-way has a statutory duty to use caution when entering an intersection against a flashing yellow traffic control light as to lookout, speed, and management and control. In this case the evidence is undisputed that Mrs. Tombal did make an efficient lookout and that she was not negligent as to speed and, further, that she was excused from possible negligence as to management and control by virtue of the emergency doctrine.

[1] *See Cook v. Wisconsin Telephone Co.* (1953), 263 Wis. 56, 56 N. W. 2d 494, and cases cited therein.

We view this as a very close case as to whether the trial court should have directed the verdict. We have concluded the trial court was correct and, consequently, there is no error. However, we again admonish that in close cases the better practice is to reserve ruling on the motion for directed verdict and submit the matter to the jury. In the recent case of *Flintrop v. Lefco* (1971), 52 Wis. 2d 244, 251, 190 N. W. 2d 140, we stated:

" 'It is to be regretted that the circuit court did not reserve its ruling on the motion for directed verdict until after the jury had returned its special verdict. By so doing, even though the court after the return of the verdict did see fit to have granted the motion, there would now be no necessity of granting a new trial. We do not advocate that such procedure invariably be followed, but in close cases we deem it to be preferable.' *Davis v. Skille, supra,* 490."

The defendants also contend the jury award of $1,500 for past wage loss and $17,000 for personal injury is excessive. The trial court very thoroughly reviewed the testimony concerning the injuries sustained by Mrs. Tombal in light of the damages awarded and concluded the damages were not excessive. We, too, have reviewed the record and agree that the evidence, which for the most part is undisputed, is amply sufficient to sustain the amounts awarded and they are not excessive.

The defendants' principal attack on the damages is that the damages are too high because the jury became prejudiced and perverse against the defendants after the trial court directed the verdict on liability against them. The argument is that the defendants forcefully and thoroughly pursued the liability issues, and particularly the negligence of Mrs. Tombal throughout the trial, and when the jury was informed that the liability issues would not be submitted to it the jury became suspicious of the credibility of their entire presentation,

including damages, as reflected by its award to the plaintiff.

We have concluded the damages were not excessive. In any event, when a party elects to pursue, vigorously, a questionable defense on liability, as he has a right to do, he has made a strategic decision that may work against him to some degree in the manner suggested. However, he has made the decision and has no relief from it provided the damages awarded find support in the evidence and the amount awarded is within reasonable limits.

*By the Court.*—Judgment affirmed.

ROBERT W. HANSEN, J. *(dissenting)*. This was a daytime accident at an amber light-marked intersection. Plaintiff had the "right-of-way" and observed defendant's vehicle stop and then move into her path of travel. The trial court held, as a matter of law, that the plaintiff had no opportunity to do anything to avoid the accident. But it was testified that plaintiff driver said to defendant driver at the time of the collision, "Why didn't you see me, I blinked my lights three times at you?" The writer would see an issue of fact for the jury to determine whether defendant's election to blink lights rather than sound the horn as a warning constituted negligence as to management and control—in a daytime intersection accident. *(See: Cook v. Wisconsin Telephone Co.* (1953), 263 Wis. 56, 62, 56 N. W. 2d 494.) So the writer would reverse and remand for a new trial on the issue of negligence, agreeing that the defendant driver was more negligent, as a matter of law, than the plaintiff driver but not, as a matter of law, 100 percent negligent.

I am authorized to state that Mr. Justice LEO B. HANLEY joins in this dissent.